RUVER MOYA

VERSUS

MICHAEL LUCAS

NO. 20-CA-329

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE OFFICE OF WORKERS' COMPENSATION
DISTRICT 7
STATE OF LOUISIANA
NO. 18-4523
HONORABLE SHANNON BRUNO BISHOP, JUDGE PRESIDING

March 24, 2021

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Hans J. Liljeberg, and John J. Molaison, Jr.

**AFFIRMED**
    **HJL**
    **FHW**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLANT,
RUVER MOYA
     Galen M. Hair
     Madison C. Pitre
     David C. Spinner

**LILJEBERG, J.**

Claimant seeks review of the workers' compensation court's judgment, finding he failed to meet his burden of proving that he was disabled from work and denying his request for indemnity benefits. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

On July 10, 2018, claimant, Ruver Moya, filed a Disputed Claim for Compensation asserting that he is entitled to workers' compensation benefits as a result of a work-related injury he suffered on January 19, 2018. In his claim, Mr. Moya asserts that he was working on the roof of a private home in the course and scope of his employment with defendant, Michael Lucas, when he stepped on a tree branch and fell off the roof. Mr. Moya sustained fractures to his spine due to the fall and underwent two surgeries and other medical treatment as a result. On August 27, 2018, Mr. Lucas filed an Answer to the disputed claim, denying that Mr. Moya was his employee and/or that he is entitled to any indemnity or medical benefits pursuant to the Louisiana Workers' Compensation Act.

This matter came before the workers' compensation court for trial on January 14, 2020. At trial, two witnesses testified--Mr. Moya and Mr. Lucas. Mr. Moya testified that he is from Honduras but has been living in New Orleans for fifteen years. He stated that he met Mr. Lucas outside the Lowe's store in Metairie in 2008 and that he worked for him "permanently" doing construction work for approximately ten years. Mr. Moya explained that Mr. Lucas would obtain various jobs from homeowners and then would contact him to assist with the jobs. Mr. Lucas would pay Mr. Moya in cash for his work, even if the homeowner failed to pay Mr. Lucas. According to Mr. Moya, he "always" worked for Mr. Lucas and typically earned $750.00 per week.

Mr. Moya testified that on January 19, 2018, Mr. Lucas sent him the address where he was to report to work on a roof. Mr. Moya stated that while he was

working, he stepped on a "2 by 4 beam on the roof," which caused him to fall approximately twenty feet to the ground. Mr. Lucas was not present when Mr. Moya fell from the roof. Mr. Moya stated that he was taken by ambulance to the hospital, where it was determined that he had a "broken spine" and he underwent two surgeries. He stated that he was in the hospital for eight days. Mr. Moya testified that the cost of his medical treatment was $195,174.58, but he did not know how much he owed, had not paid anything for his medical treatment, and had not been receiving bills for his medical treatment.

Mr. Moya further testified at trial that the process of recovering from surgery has been very difficult. He stated that he still does not feel well, that his feet hurt and cramp up, and that his body is "not well." When asked if he has been able to work since the accident, Mr. Moya stated that he was able to work very little, "sometimes just two days a week." Mr. Moya stated that he had difficulty remembering how many days he had worked since the accident. When asked if he had worked less than 20 days since the accident, he replied, "That's possible, or a month," and he indicated he made $100 per day for this work. Mr. Moya testified that he does not have stability or balance, and he cannot work any "heavy jobs." He stated that he can only do "easy jobs like sweeping or cleaning something, or jobs where I'm just standing."

On cross-examination, Mr. Moya stated that the bodily injuries he sustained in the accident were to his spine and backbone. He stated that the problems he still had due to the accident were pain and cramps in his feet and legs, which he could not move very well, and he would fall if he would "stumble just a little bit." He also stated that he did not feel well and still had pain. Mr. Moya testified that he was no longer receiving medical treatment for the accident, and he did not remember when he received his last medical treatment.

Michael Lucas testified that he did "almost everything" for work. He stated that he worked as a waiter on weekends for twenty years and that he was also a general handyman, who did all kinds of small jobs, including construction work, cleaning houses, trimming trees, building fences and decks, dry base, and landscaping. He stated that he mainly worked on his own and that his construction jobs were mostly just repairs. Mr. Lucas testified that his jobs typically required only one person, but there were times when he needed another person to assist. Mr. Lucas testified that Mr. Moya helped him with construction work when he was available, particularly when a job was too big for him alone or when he was too busy and the client could not wait. He stated that he never hired Mr. Moya for regular ongoing work. He stated that the number of days Mr. Moya worked for him would vary, but it was mostly only two times per week.

Mr. Lucas testified that on the day of the accident, January 19, 2018, he was too busy to help a client in Metairie, so he called Mr. Moya who agreed to do the work. After meeting Mr. Moya at the client's house, Mr. Lucas went to Covington to give some estimates. Approximately two hours later, the client called and told him that Mr. Moya had fallen off the roof.

On cross-examination, Mr. Lucas testified that he did not maintain workers' compensation insurance because he was just a regular handyman who usually worked by himself, unless he needed help for a job. He also stated that it would cost too much money, considering that the jobs he had were not consistent. Mr. Lucas maintained that while Mr. Moya helped him at times, he was not an employee.

On May 18, 2020, the workers' compensation court rendered a judgment in favor of Mr. Moya, finding that Mr. Moya met his burden of proving that he sustained injuries during an on-the-job accident on January 19, 2018, and that he was an employee of Michael Lucas at that time. The court ordered Mr. Lucas to

pay any outstanding medical bills and out-of-pocket expenses related to the accident, as well as any ongoing reasonable and necessary medical treatment, pursuant to the medical treatment guidelines, for the injuries he sustained in the accident. The court also found that Mr. Lucas was arbitrary and capricious for failing to authorize medical treatment and to pay medical expenses, and ordered him to pay penalties of $4,000, attorney's fees of $4,000, court costs, and interest. In Mr. Lucas' favor, the workers' compensation court found that Mr. Moya failed to meet his burden of proving that he was disabled from work as a result of the injuries sustained in the work accident, thereby denying his claim for indemnity benefits.

Mr. Moya appeals the denial of his claim for indemnity benefits, as set forth in the workers' compensation court's May 18, 2020 judgment.

## LAW AND DISCUSSION

On appeal, Mr. Moya argues that the workers' compensation court erred by finding that he failed to meet his burden of proving that he is entitled to ongoing and past workers' compensation benefits. He argues that the evidence established that he was entitled to temporary total disability benefits ("TTDs"), or alternatively supplemental earnings benefits ("SEBs"), because Mr. Moya's uncontested testimony was that he was unable to perform the employment duties of "odd jobs," and the medical records show he suffered severe spinal injuries.

The factual findings of the workers' compensation court are subject to the manifest error or clearly wrong standard of review. *Chaisson v. Cajun Bag & Supply Co.*, 97-1225 (La. 3/4/98), 708 So.2d 375, 380; *Hoofkin v. Advantage Nursing Services, Inc., et al.*, 03-340 (La. App. 5 Cir. 10/15/03), 860 So.2d 57, 59, *writ denied*, 03-3136 (La. 1/30/04), 865 So.2d 85. In applying that standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Chaisson*, 708 So.2d at

381; *Blackwell v. Heck Industries*, 10-231 (La. App. 3 Cir. 10/6/10), 48 So.3d 411, 412.

Pursuant to La. R.S. 23:1221(1)(c), in order to establish entitlement to temporary total disability benefits, a claimant must prove by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment or self-employment due to his injury, regardless of the nature of the employment, including working in pain. *Tassin v. Touro Infirmary, et al.*, 17-8 (La. App. 5 Cir. 5/31/17), 222 So.3d 212, 217; *Champagne v. PHS Industries*, 07-31 (La. App. 5 Cir. 5/29/07), 960 So.2d 1122, 1126-1127; *Albert v. Trans-Met, Inc.*, 38,261 (La. App. 2 Cir. 6/23/04), 877 So.2d 183, 188. The clear and convincing standard requires a party to prove that the existence of a contested fact is highly probable, or much more probable than its non-existence. *Iberia Medical Center v. Ward*, 09-2705 (La. 11/30/10), 53 So.3d 421, 432; *Crews v. Alexas Corp., et al.*, 03-915 (La. App. 5 Cir. 12/30/03), 864 So.2d 729, 734. Although the workers' compensation laws are to be construed liberally in favor of the claimant, that interpretation cannot lessen the claimant's burden. *Bolton v. Grant Parish School Board*, 98-1430 (La. 3/2/99), 730 So.2d 882, 885.

In order to establish by clear and convincing evidence that a claimant is disabled and cannot engage in any employment, the claimant must present objective medical evidence of the disabling condition. *Gabriel v. Delta Air Lines, Inc., et al.*, 12-428 (La. App. 5 Cir. 1/30/13), 106 So.3d 1285, 1291, *writ denied*, 13-917 (La. 5/31/13), 118 So.3d 399; *Sanchez v. AIG Insurance, et al.*, 17-116 (La. App. 5 Cir. 10/25/17), 230 So.3d 271, 276. The question is not whether the workers' compensation claimant could perform the work he previously performed, but rather, whether the claimant could perform some sort of work. *Gabriel*, 106 So.3d at 1291. An employee is not entitled to temporary total disability benefits, despite complaints of pain, if he can engage, at a minimum, in light-duty work.

*Cooper v. St. Tammany Parish School Board*, 02-2433 (La. App. 1 Cir. 11/7/03), 862 So.2d 1001, 1008, *writ denied*, 04-0434 (La. 4/23/04), 870 So.2d 300.

In the present case, the testimony and evidence did not establish that Mr. Moya has been unable to perform any work or to engage in any type of employment since the accident. To the contrary, at trial, Mr. Moya testified that he has performed some work since the accident. He stated that he was not able to do "heavy jobs" but he admitted that he was able to do "easy jobs like sweeping or cleaning something, or jobs where I'm just standing."

Mr. Moya's medical records from the date of the accident, January 19, 2018, through the date he was discharged, January 26, 2018, as well as his records from a February 5, 2018 office visit, were admitted into evidence. Although the medical records show that Mr. Moya sustained serious injuries and underwent two surgeries as a result of the accident, they do not establish that Mr. Moya had a disabling condition that prevented him from engaging in employment after the accident. The doctor's notes from Mr. Moya's February 5, 2018 office visit indicate that he had been doing very well since he was discharged from the hospital, and that he was walking with the help of a cane. They further provide that Mr. Moya had a "Normal gait, even without cane." The notes also indicate that Mr. Moya had "No weakness. Just expected pain." The record does not contain any medical records after February 5, 2018, and no evidence was submitted to show that any doctor found Mr. Moya to be disabled, unable to work, or subject to work restrictions.

As noted above, there is no presumption of disability when determining if a claimant is entitled to TTDs. Rather, in order to obtain TTDs, it is the claimant's burden to prove he is disabled and cannot engage in any employment, regardless of its nature. *Crews*, 864 So.2d at 732. Mr. Moya failed to meet his burden because he did not show that he could not work after the accident, and there was no medical

evidence showing that he suffers from a disabling condition. Accordingly, after review, we find no error in the workers' compensation court's finding that Mr. Moya failed to meet his burden of proving that he is disabled and entitled to TTDs.

Alternatively, Mr. Moya argues that if his claim for TTDs is denied, he is entitled to SEBs for the maximum time allowed by statute. He asserts that his testimony at trial that he could only obtain a few odd jobs from a friend since the accident and that he is weak and physically unstable was sufficient to establish his entitlement to SEBs.

The purpose of supplemental earnings benefits is to compensate the injured employee for the wage earning capacity he lost as a result of the accident. *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551, 556. An employee is entitled to receive SEBs if he sustains a work-related accident that results in his inability to earn ninety percent (90%) or more of his pre-injury wage. *Id.*; La. R.S. 23:1221(3)(a)(i). An employee's testimony that he can no longer return to his pre-injury employment, without more, is insufficient to prove entitlement to SEBs. *Sartin v. LSU/Bogalusa Medical Center*, 07-1367 (La. App. 1 Cir. 2/8/08), 984 So.2d 777, 780. Whether an employee has carried his burden of proof is a question of fact to be determined by the workers' compensation court. *Id.*

Initially, the employee bears the burden of proving by a preponderance of the evidence that the injury caused his inability to earn 90% or more of his average pre-injury wage, whether or not in the same or similar job in which he was previously employed. La. R.S. 23:1221(3)(a)(i); *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793 (La. 1/9/11), 56 So.3d 170, 174-175; *Richard v. HSLI & Touro Infirmary*, 12-873 (La. App. 5 Cir. 5/23/13), 119 So.3d 617, 621. If the employee satisfies this initial burden, the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a

certain job and that the job was offered to the employee or was available to the employee in his or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); *Summers v. Ritz-Carlton New Orleans*, 14-800 (La. App. 5 Cir. 5/28/15), 171 So.3d 329, *writ denied*, 15-1256 (La. 9/25/15), 178 So.3d 569. If the employer meets his burden, then the employee must establish by clear and convincing evidence that he is unable to engage in the employment. La. R.S. 23:1221(3)(c)(ii). The burden of proof does not shift to the employer merely because an employee proves he is unemployed at the time of trial or unable to obtain the same type of job as before the accident. *Poissenot*, 56 So.3d at 178.

In the present case, Mr. Moya did not present sufficient testimony and/or evidence to meet his initial burden of proving that he cannot earn 90% of his pre-accident wage. No evidence was presented to show that Mr. Moya could not work in some capacity after the accident, even if he could not return to the same work he did prior to the accident. Although Mr. Moya testified that it was difficult to find jobs where he could "just sweep and make $100 a day," the testimony and evidence did not show that Mr. Moya sought employment in any other field or that he could not obtain some type of suitable employment earning at least 90% of his pre-accident wage.[1] Further, the medical evidence did not show that Mr. Moya suffered from any level of disability. Because Mr. Moya failed to meet his initial burden of proving that the accident caused an inability to earn 90% or more of his pre-injury wage, the burden never shifted to Mr. Lucas to show Mr. Moya could perform a certain job that was offered or reasonably available to him.

Accordingly, because Mr. Moya failed to meet his burden of proof, we find no manifest error in the workers' compensation court's finding that Mr. Moya did not prove entitlement to SEBs.

---

[1] Although there are no records of Mr. Moya's income prior to or after the accident, Mr. Moya testified that he earned $750 per week before the accident.

**DECREE**

For the foregoing reasons, the May 18, 2020 judgment of the workers' compensation court is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **MARCH 24, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-CA-329

**E-NOTIFIED**
OFFICE OF WORKERS' COMPENSATION, DISTRICT 7 (CLERK)
HON. SHANNON BRUNO BISHOP (DISTRICT JUDGE)
DAVID C. SPINNER (APPELLANT)          GALEN M. HAIR (APPELLANT)                    MADISON C. PITRE (APPELLANT)

**MAILED**
MICHAEL LUCAS  (APPELLEE)              JOHN E. BICKNELL, JR.
1809 PRINCETON STREET                  (APPELLANT)
METAIRIE, LA 70003                     ATTORNEY AT LAW
                                       75 RED HILL CIRCLE
                                       APARTMENT H
                                       TILBURAN, CA 94920