726 So.2d 1079 (1999)
Byron T. DASPIT
v.
SOUTHERN EAGLE SALES & SERVICES, INC.
No. 98-CA-1685
Court of Appeal of Louisiana, Fourth Circuit.
January 20, 1999.
*1080 Raymond A. Milly, Metairie, Louisiana, Attorney for Plaintiff/Appellant.
Robert E. Peyton, Joseph M. Guillot, New Orleans, Louisiana, Attorneys for Defendant/Appellee.
Court composed of Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY III, Judge Pro Tempore JAMES C. GULOTTA.
JAMES C. GULOTTA, Judge Pro Tem.
Byron Daspit appeals the judgment of the worker's compensation judge dismissing his claim for benefits. We affirm.
Plaintiff brought this action to recover benefits from his employer, Southern Eagle Sales and Services, Inc., for a back injury he allegedly sustained on October I, 1996, while working as a diesel truck mechanic. The case was tried before a worker's compensation judge on January 7 and January 26, 1998. On March 25, 1998, the trial court issued judgment in favor of defendant, ruling that the plaintiff had failed to prove by a preponderance of the evidence that an accident had occurred on the job pursuant to LSA R.S. 23:1021. The court reasoned that plaintiff's injury of October 1, 1996, which he claimed was work-related, was rather a continuing effect of the injury he had sustained in a July 1996 auto accident.
The sole issue on appeal is whether the trial judge erred in finding that plaintiff failed to meet his burden of proving an on-the-job injury.
Plaintiff was employed as a truck mechanic for Southern Eagle for twelve years. On July 9, 1996, he injured his back in an automobile accident unrelated to his employment. Plaintiff called his supervisor and said he would not be in for work that day because he had been rear-ended and was being checked out at the hospital. Plaintiff was treated at the emergency room of the hospital and saw his personal physician, Dr. David Learned, a few days later on July 12th.
On his initial visit to Dr. Learned, plaintiff complained of stiffness and soreness in his lower back and numbness in his right leg. Dr. Learned treated plaintiff for a back sprain by prescribing muscle relaxants and anti-inflammatory pain medications. The doctor told plaintiff to "take it easy" and to avoid any really heavy lifting. Plaintiff returned to work the day after the accident without mentioning his injury to his supervisor. However, he did enlist his co-worker, David Herman, to help him with some of the heavier jobs. Plaintiff saw Dr. Learned again on July 19 and on August 15, still complaining of pain in his back and right leg. On August 15, Dr. Learned referred plaintiff to a physical therapist.
On October 1,1996, while at work, plaintiff had been bending over the hood of a car repairing the air conditioning for several hours when he discovered he could not straighten up because of the pain in his back. He told his supervisor he was in pain and left work. Later that evening, he went to the hospital emergency room. He called his supervisor to report an on-the-job injury, and was told he would have to come in the next day, fill out the necessary paperwork, and be examined by the company physician, Dr. Joseph Taminie.
Dr. Taminie saw plaintiff on October 4th He concurred with Dr. Learned's diagnosis of lumbar sacral muscle sprain, and noted that if the symptoms did not improve within a four to six week period, he would conduct tests to determine if a herniated disk were present. Dr. Taminie restricted plaintiff to light duty work. After a few weeks, Southern Eagle placed plaintiff on short-term disability.
Plaintiff saw Dr. Mimeles, an orthopedic specialist to whom he was referred by Dr. *1081 Learned, on October 7th Dr. Mimeles ordered an MRI, which showed some evidence of disk herniation. Because plaintiff was still complaining of back pain in November, Dr. Mimeles referred him to a neurosugeon, Dr. Miranne, for a second opinion. Dr. Miranne recommended surgery. Plaintiff then consulted an orthopedic surgeon. On April 16, 1997, after treating plaintiff conservatively for several months without result, the surgeon performed a percutaneous suction diskectomy, which, according to the record, was outpatient surgery. Although plaintiff seemed to be improving after surgery, he suffered another automobile accident in August 1997 that further aggravated his condition. Plaintiff has not returned to work.
The Louisiana Worker's Compensation Law provides coverage to a claimant who suffers "personal injury by accident arising out of and in the course of his employment." LSA-R.S. 23:1031 A. A work related accident is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." LSA-R.S. 23:1021(1).
The plaintiff has the burden of proving, by a preponderance of the evidence, that a work related accident occurred. Robinson v. Travelers Ins. Co., 619 So.2d 1261, 1264 (La.App. 3 Cir.1993); Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La. 1992). To meet this burden, the testimony must show more probably than not that an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry his burden. Likewise, the plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation. Prim v. City of Shreveport, 297 So.2d 421, 422 (La.1974). The law is settled that a preexisting disease or infirmity of the employee does not disqualify the worker's compensation claim if the work injury aggravated, accelerated or combined with the disease or infirmity to produce the disability for which compensation is claimed. Robinson, supra, at 1264.
On appeal, the factual findings of the worker's compensation judge are subject to the manifest error rule. Under this standard, the reviewing court does not decide whether the findings are right or wrong, but whether they are reasonable. Jackson v. Creger Automotive Co., Inc., 29,249 (La.App. 2 Cir. 4/2/97); 691 So.2d 824, 829, writ denied, 97-1436 (La.9/26/97); 701 So.2d 984. In the instant case, after reviewing the evidence, we find no manifest error in the judge's conclusion that plaintiff failed to meet his burden of proving a work related accident resulting in disability.
Witnesses at trial included the plaintiff, his co-workers David Herman and Danny Tillman, his supervisor Jimmy Nichols, and Dr. Taminie. The medical records of all five doctors were introduced into evidence, as were the depositions of Dr. Learned, vocational rehabilitation expert Cindy Harris, and Southern Eagle supervisor Herman Scanlan. The plaintiff testified that he was "stiff and sore" after the July auto accident. However, he felt his condition was improving until October 1st when after bending over the hood of a car for several hours at work, his back pain became so severe he could not straighten up.
There is a significant conflict between this testimony and that of plaintiff's treating physician, Dr. Learned, who stated in his deposition that the plaintiff's condition was not improving before October 1st, but rather that he was complaining equally (of pain) at every visit. In August, Dr. Learned referred plaintiff to a physical therapist because "he was not making much improvement from the wreck." Dr. Learned's testimony and records reflect that he did not know specifically that plaintiff had suffered an accident at work. In October, because plaintiff was not making much progress with the physical therapist, Dr. Learned referred plaintiff to Dr. Mimeles, an orthopedist. Dr. Mimeles' October 7th report states that plaintiff's back problem "dates back two months ago" to an auto accident; there is no mention of an incident at work.
*1082 Dr. Taminie, the company physician who examined plaintiff following the October 1st incident, testified that in his opinion, plaintiff's herniated disk resulted from the July auto accident, not from the plaintiff's bending at work. He explained that the auto accident was a significant trauma; whereas, bending is not a traumatic event. He further explained that it generally takes time for the symptoms of a herniated disk to develop, and therefore it is not unusual for the condition to be diagnosed months after its occurrence.
Dr. Taminie indicated that plaintiff's work could have aggravated his injury, but he never said to what extent. It is also clear from the testimony that plaintiff did not report his injury from the July auto accident to his supervisor as required by company policy. Plaintiff concurred with his supervisor's testimony that after telling the supervisor over the phone he was being "checked out" at the hospital, plaintiff returned to normal work the next day. Plaintiff did not mention his back injury to anyone at work other than David Herman, a fellow mechanic whom he asked to help with the heavier jobs.
Defendants assert that the reason for the policy requiring any off work injuries to be reported is so that the employee can be examined by a company physician to determine his fitness to return to his job. Defendants argue that the flare up of plaintiff's back injury could have been prevented if plaintiff had reported the injury and had been seen by a company doctor, who could have placed him on light duty status.
None of the medical evidence contradicts Dr. Taminie's conclusion that plaintiff's condition resulted from his auto accident. Moreover, plaintiff introduced no evidence to show the extent to which his initial injury may have been aggravated by the claimed incident at work. Plaintiff's surgeon was not called to testify regarding plaintiff's condition after surgery and prior to his second automobile accident. The only evidence concerning the nature and extent of plaintiff's disability was rehabilitation expert Cindy Harris, whose deposition testimony was introduced by the defendants. She classified plaintiff's job at Southern Eagle as "medium duty" work because of the availability of hoists and dolleys to assist with the heavy lifting. In her opinion, there was no reason why plaintiff could not have returned to his regular job following the surgery.
Considering the evidence, we cannot conclude that the findings of the worker's compensation judge were erroneous. Plaintiff clearly failed to carry the burden of showing that his injury was work related. Having so concluded, we affirm the judgment of the trial court.
AFFIRMED.